UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

UNITED STATES

v.

                                          5:07-MJ-0058

DELFINO HERRERA

                          Defendant.

_____

APPEARANCES:                             OF COUNSEL:

HON. GLENN T. SUDDABY          CRAIG A. BENEDICT, ESQ.
United States Attorney for the         Assistant United States Attorney
 Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, New York 13261-7198

OFFICE OF THE FEDERAL PUBLIC DEFENDER   JAMES F. GREENWALD, ESQ.
The Clinton Exchange, 3rd Floor         Assistant Federal Public Defender
4 Clinton Square
Syracuse, New York 13202

GEORGE H. LOWE, United States Magistrate Judge

**<u>MEMORANDUM DECISION AND ORDER</u>**

      Defendant Delfino Herrera was charged by Criminal Complaint with an alleged violation

of 8 U.S.C. § 1326(a).  Dkt. No. 1.  He initially appeared before this Court on February 22, 2007.

The issue of proper venue was raised at that time.  On February 27, 2007, the Court heard further

oral argument on this issue.

      The Criminal Complaint provides as follows:

           On or about February 21, 2007, in Oswego, New York, in
      the Northern District of New York, the defendant, being an alien
      and a citizen of Mexico who had previously been removed from
      the United States on or about April 9, 2002, and again August 18,

2003, was found in the United States, having not obtained the consent of the Attorney General or his/her successor, the Secretary of the Department of Homeland Security of the United States for re-application by the defendant for admission into the United States, in violation of Title 8, United States Code, Section 1326(a).

Dkt. No. 1 at 1.

Border Patrol Special Agent John W. McEachen's Affidavit in support of the Complaint states, among other thing:

2.  On February 21, 2007, Senior Patrol Agent Ryan Howe, of the Oswego Border Patrol Station, encountered Delfino HERRERA-Velasquez while performing patrol and Transportation Check duties near the Greyhound Station in Geneva, New York.  Agent Howe determined that HERRERA-Velasquez is a citizen of Mexico who had last entered the United States illegally by walking across the U.S./Mexico Border near San Ysidro, Californmia on March 20, 2006.  Agent Howe determined that HERRERA is Present Without Admission in the United States, and arrested HERRERA on the corresponding administrative Immigration violation[.]  Pursuant to Border Patrol policy, Herrera-Velasquez was promptly transported to Osewgo, [sic] NY to our Border-Patrol station.  The transportation occurred to administrativevly [sic] process the alien and to determine whether he had been previously deported, including by taking his finger prints and running them throgh [sic] our database.  If the alien had been previously deported, he would be subject to criminal prosecution under 8 USC § 1326(a).

3.  A comparison of HERRERA-Velasquez's fingerprints with the FBI's fingerprint database, via the IAFIS system, revealed that the subject's fingerprints do match those possessed by an alien who was deported to Mexico on April 9, 2002, and again on August 18, 2003.  The Right index fingerprint, displayed on an Order of Removal (I-205) for Delfino HERRERA-Velasquez, was compared with the IAFIS database and was found to be a match.

4.  Once in Osewgo, [sic] I further determined that Delfino HERRERA-Valasquez has never applied for or received permission to reenter the United States after his removal on

2

> April 9, 2002 from the Attorney General.  He was thus
> "found" in the United States for criminal prosecution in
> Oswego, NY under 8 USC § 1326(a).

Dkt. No. 1 at 2.

## DISCUSSION

Section 1326(a) of Title 8 of the United States Code provides, in pertinent part, that an alien who

> (1) has been denied admission, excluded, deported, or removed or
> has departed the United States while an order of exclusion,
> deportation, or removal is outstanding, and thereafter
> (2) enters, attempts to enter, or is at any time found in, the United
> States, unless (a) prior to his reembarkation at a place outside the
> United States or his application for admission from foreign
> contiguous territory, the Attorney General has expressly consented
> to such alien's reapplying for admission; or (B) with respect to an
> alien previously denied admission and removed, unless such alien
> shall establish that he was not required to obtain such advance
> consent under this chapter or any prior Act,

> shall be fined under Title 18, or imprisoned not more than 2 years, or both.

8 U.S.C. § 1326(a) (2006).  The Defendant argues that, for purposes of section 1326(a), he was

not "found in" Oswego, New York (which is in this District), as alleged in the Complaint, but

rather he was "found in" Geneva, New York (which is in the Western District of New York).  In

making this argument the Defendant relies principally on the Second Circuit decision in *United

States v. Rivera-Ventura*, 72 F.3d 277 (2d Cir. 1995).

In that case, Rivera-Ventura, a native of El Salvador, illegally entered the United States,

was promptly apprehended, and was deported from the United States in October of 1986.  About

a year later he again illegally entered the United States, and soon was arrested in Texas by agents

of the Immigration and Naturalization Service ("INS").  INS commenced deportation

3

proceedings against Rivera-Ventura in Texas, but those proceedings were transferred from Texas to New York.  In New York Rivera-Ventura was released on bail in 1987, and disappeared, to be rearrested by INS agents in New York in 1994.  That same year he was indicted in the Eastern District of New York for violation of 8 U.S.C. § 1326(a), and later was convicted.  On appeal, Rivera-Ventura argued that he had been "found in" Texas in 1987, and therefore his prosecution in 1994 occurred more than five years after the offense had been committed and thus was time-barred.

The Government contended in opposition that the offense of being "found," within the meaning of section 1326(a), is a continuing offense, and therefore Rivera-Ventura was "found" in Texas in 1987, but also, as a continuation of the offense, was "found" in New York in 1994, when the offense then was completed, causing the five years statute of limitations to begin to run at that point in time.  The Second Circuit rejected this contention, but agreed with the Government's alternative argument that the statute of limitations was tolled while Rivera-Ventura was an absconder.  Therefore the conviction was affirmed.

Here the Government argues that the *Rivera-Ventura* decision is distinguishable, since the issue there was statute of limitations, not venue.  In *United States v. Hernandez*, 189 F.3d 785 (9th Cir. 1999), where the issue was venue, the Government made the same argument, but the Ninth Circuit disagreed: "By articulating the act that triggers *when* a § 1326 violation is committed – the alien's discovery by the immigration authorities – these cases [including the Second Circuit's decision in *Rivera-Ventura*] also provide a limit on *where* venue may lie."  *Id.*

at 790 (emphasis in original).[1]

For present purposes this Court accepts the Ninth Circuit's analysis and finds *Rivera-Ventura* to be applicable to the pending venue issue.  However, based upon *Rivera-Ventura*, the Court finds venue in this District to be proper.[2]

In *Rivera-Ventura*, the Second Circuit instructed:

> The offense of being "found in" the United States, however, is somewhat more complex [than the offense of illegal entry], since it depends not only on the conduct of the alien but also on facts and knowledge of the federal authorities . . . .  [T]he offense of being "found in" the United States in violation of § 1326(a) is not complete until the authorities both discover the illegal alien in the United States . . . and know, or with the exercise of diligence typical of law enforcement authorities could have discovered, the illegality of his presence . . . .

*Rivera-Ventura*, 72 F.3d at 281-82.

A focus for the venue analysis, *Rivera-Ventura* teaches, is the "facts and knowledge of the federal authorities." *Id.* at 281.  The Defendant here argues that the federal authorities had all of the facts and knowledge necessary for a section 1326 prosecution when they encountered him at the Greyhound Station in Geneva.  This presumably is because he made certain admissions.  The Court is not at all certain that Defendant did fully and truthfully admit all of the relevant facts but I will assume so *arguendo*.  However, venue should not hinge on the truthfulness, or lack thereof, of an alien's statements at the time of apprehension.  The cases are legion in which

---

[1] In *Hernandez*, unlike the instant case, the Government **conceded** that the defendant was first "found in" the District of Oregon, and then was transported to the Western District of Washington, where he was prosecuted.  *Hernandez*, 189 F.3d at 787.

[2] Defendant's reliance on *Rivera-Ventura* might prove too much.  Ironically, based upon Defendant's analysis, it is arguable that in that case venue should have been in Texas.

aliens have made false statements, or partially false statements, at that time.  Venue should lie, and does so in this case, in the District where the authorities have **confirmation** of the facts concerning the alien.[3]  The Border Patrol's policy, as described in Special Agent McEachen's Affidavit (Dkt. No. 1 at 2), of promptly transporting an alien to a Border Patrol station where, through fingerprint analysis and other methods, his true status can be ascertained, is, in this Court's view, eminently sound.  This policy also is consistent with the requirement that the Border Patrol "exercise . . . diligence typical of law enforcement authorities" in discovering an alien's status.  *Rivera-Ventura*, 72 F.3d at 282.  Under the facts of this case, the Defendant was "found in" Oswego, New York, in this District, where his true status was confirmed.

     **ACCORDINGLY**, it is hereby

     **ORDERED**, that Defendant's motion to dismiss the Complaint is **denied**.[4]


Dated: March 6, 2007
     Syracuse, New York

                           George H. Lowe
                         United States Magistrate Judge

---

[3]  In *Rivera-Ventura* the authorities presumably had confirmation of Rivera-Ventura's true status in Texas since they had commenced formal deportation proceedings against him there.  *Rivera-Ventura*, 72 F.3d at 279.

[4]  Given this ruling it is not necessary to address the issue of this Court's authority to grant such a motion.